**Ethel Jett McCAMMON,
Plaintiff–Appellant,**

v.

**Kenneth MEREDITH and wife Joyce
Meredith, Defendants–Appellees.**

Court of Appeals of Tennessee,
Eastern Section.

Sept. 5, 1991.

Permission to Appeal Denied by
Supreme Court March 16, 1992.

Janet Mayfield Hogan, Knoxville, for plaintiff-appellant.

Thomas E. Cowan, Jr., with Cowan, Merryman, Landstreet & Finney, Elizabethton, for defendants-appellees.

## OPINION

SANDERS, Presiding Judge (Eastern Section).

The Plaintiff has appealed from a chancery decree, saying it imposed an additional burden on an easement across her property and failed to adequately compensate her for damages to her property by the Defendants' unlawful trespass on her property.

The Plaintiff-Appellant, Ethel Jett McCammon, was one of the nine brothers and sisters surviving Max Jett who died in Carter County in 1973. As pertinent here, Max Jett owned a farm containing approximately 275 acres which was partitioned in kind in the chancery court. In 1974 the Plaintiff, Mrs. McCammon, received a deed from the clerk and master for a 32.2–acre tract which is shown on the attached appendix as Tract I. Her sister, Marian Jett Jones, received an adjoining tract containing 34.4 acres, which is shown as Tract II on the appendix. As pertinent here, the following easement was imposed on Mrs. McCammon's property: "And expressly reserving across the Northerly boundary of said tract or parcel of land and along the line with Miller an easement 50 feet in width from the public road at the Milligan College property to the tract and parcel to be conveyed to Marian Jett Jones, being immediately easterly of this tract, for the purpose of ingress and egress to and from said parcel of land, said easement containing approximately 3.7 acres."

The following easement was granted to Mrs. Jones in her deed: "... together with an easement across the Northerly line of the property conveyed to Ethel Jett McCammon along the Miller line 50 feet in width extending from the property conveyed to Marian Jett Jones to the public road, said easement being for the purpose of ingress and egress to this property." The easement referred to in the deeds is shown on the appendix.

In 1977 Mrs. Jones conveyed her property, along with the easement, to a Mr. Shell. In 1983 Shell conveyed a 5.08–acre tract off the Jones tract to Defendants–Appellees Kenneth Meredith and Joyce Meredith. The deed also conveyed the easement across Mrs. McCammon's property. This tract is shown as Tract III on the appendix. In January, 1986, the Merediths purchased from Mr. and Mrs. Letterman a 34–acre tract of land which adjoins the McCammon property on its easterly boundary and where the easement is located on its south side. It is shown on the appendix as Tract IV. The easterly boundary of this tract is a creek called Toll Creek. Toll Creek passes under a bridge at the corner of the McCammon property and Tract IV as shown on Tract V of the appendix, Tract V being a detailed enlargement of the northeast portion of the McCammon property depicting the location of the easement. Since 1953 access to Tract IV has been by way of the "old road grade" and across the "second bridge" shown on Tract V.

At the time Mrs. McCammon received her deed to her property in 1974 she was living in California where she taught in the public schools. Between 1974 and 1986 she returned to Tennessee for short visits on

an average of about every two years. Her property was not rented or farmed during this period of time but she usually went there to look at it. During this same period of time Mr. Meredith rented Tract IV from the Lettermans for farming purposes. He testified it necessitated such a sharp turn at the second bridge to get to and from the Letterman property that when he was moving big, heavy farm machinery to or from the Letterman property he moved it over Tract V in the general area of where the "new road grade" is depicted, but the "new road grade" was not in existence at that time. Sometime between January, 1986, when Mr. Meredith purchased Tract IV, and June of that year, without the knowledge or consent of Mrs. McCammon, he went upon her property and constructed a new road, depicted on Tract V as "new road grade," which he used for access to the Letterman Tract IV. He testified he discontinued his access to this property by way of the second bridge because it was in disrepair. He constructed two entrances to Tract IV from the easement he had over the McCammon property to Tract III.

Sometime during the latter part of 1985 or the first part of 1986 Mrs. McCammon retired from her teaching position and her husband retired from his practice of law. It was their plan to return to Tennessee and construct a home on their property. In connection with the construction of their house were plans to improve and beautify an area around a flowing spring located in about the center of Tract V. Apparently this was an exceptionally fine spring. The proof showed Max Jett purchased the property because of the spring. He had built concrete walls around it to protect it from the flood waters of Toll Creek, a fence had been placed around it to protect it from livestock, and its water was used by a nearby resident for household use until about the middle of 1985.

Mr. and Mrs. McCammon moved back to Tennessee in June of 1986 and when they went to their property they discovered what the Defendant was, and had been, doing. They found the Defendant had not only built a road through the middle of Tract V, he had destroyed their fences; he had opened entrances from their property into Tract IV; he had placed locked gates across the road and was conducting farming operations on their property. But the most dastardly thing he had done was build the new road over the top of the flowing spring. He placed a pipe under the roadbed for the surplus water to drain through but, for all practical purposes, he had destroyed that spring.

The Plaintiff filed suit, asking that the Defendant be prevented from going upon her property and removing trees and growth, from conducting farming operations on her property, from building fencing and maintaining locked gates on her property and that he be enjoined from using the easement upon her property for accessing any property other than Tract III. She asked that the Defendant be mandatorily enjoined to remove the roadbed from the spring and the surrounding area. She also asked for damages for the destruction of her spring and fences and for conducting farming operations on her property. She asked for $20,000 compensatory and $25,000 punitive damages.

For answer, Defendant admitted he constructed the new road but denied he destroyed the spring because he placed a pipe under the road for the water to flow through. He denied damaging Plaintiff's property. He also alleged he had a prescriptive easement over Tract V to access Tract IV.

Upon the trial of the case the chancellor found the Defendant had committed a trespass upon Plaintiff's property by covering up the spring, and fixed her damages at $200. He also found the Defendant had committed a trespass on Plaintiff's property by conducting farming operations on it, and fixed her damages at $200. He found the Defendant did not have the right to use the easement to access Tract IV. Then he said, "The Court, nevertheless, finds that Mr. Meredith may continue to have access to the Hill–Letterman [IV] tract via this newly built road because larger vehicles intermittently made use of the general area [Tract V] even after the 1953 road to the

Hill–Letterman [IV] tract was constructed."

The Plaintiff has appealed, saying the court was in error in fixing her damages for his trespass on her property at a token amount and finding a prescriptive easement growing out of intermittent use of Tract V for large vehicles. We agree, and modify the decree for the reasons hereinafter set forth.

■ Our review in cases of this nature is *de novo* upon the record of the trial court, accompanied by a presumption of correctness of the findings of the trial court unless the preponderance of the evidence is otherwise. Rule 13(d), T.R.A.P.

■ We agree with the trial court there was proof of intermittent use of Tract V for moving farm machinery to and from Tract IV. However, a prescriptive right cannot be acquired by intermittent use. Twenty years of adverse use is required to establish a prescriptive easement. *German v. Graham,* 497 S.W.2d 245, 248 (1972); *Ferrell v. Ferrell,* 60 Tenn. 329, 335 (1872). In addition, "the use and enjoyment which will give title by prescription to an easement ... must be adverse, under claim of right, continuous, uninterrupted, open, visible, exclusive, and with the knowledge and acquiescence of the owner of the servient tenement, and must continue for the full prescriptive period...." *House v. Close,* 48 Tenn.App. 341, 346 S.W.2d 445 at 447 (1961).

■ In *House v. Close,* 346 S.W.2d at 447, the court noted, "The use and enjoyment which will give title by prescription to an easement or other incorporeal right is substantially the same in quality and characteristics as the adverse possession which will give title to real estate." *House,* 346 S.W.2d at 447–448. The adverse possessor has the burden of establishing by clear and positive proof such adverse possession. *Whitworth v. Hutchison,* 731 S.W.2d 915, 917 (Tenn.App.1986); *Jones v. Coal Creek Mining & Mfg. Co.,* 133 Tenn. 183, 180 S.W. 991 (1915).

■ Mere acts of trespass do not constitute actual possession. "The act of a cas-

ual trespasser who enters upon land for a temporary purpose, as for example, to hunt or fish, is not an act of possession, because it is lacking in the purpose to seize and hold...." *Round Mountain Lumber & Coal Co. v. Bass,* 136 Tenn. 687, 700, 191 S.W. 341 (1916). "[C]asual or seasonal trespass is not enough to satisfy the rigid requirements of adverse possession." *U.S. v. McCulley,* 100 F.Supp. 379, 383 (E.D.Tenn.1951).

■ The proof in the record relating to the intermittent or occasional use of Tract V for moving farm machinery to and from Tract IV falls far short of the criteria for establishing an easement by prescription.

■ We agree with the holding of the chancellor that the Defendant cannot use his easement to Tract III to access Tract IV. The owner of an easement "cannot materially increase the burden of it upon the servient estate or impose thereon a new and additional burden." *Adams v. Winnett,* 25 Tenn.App. 276, 156 S.W.2d 353, 357 (1941). Enlarging an easement to include adjoining tracts does increase the burden. "An easement for the benefit of one land can not be enlarged and extended to other adjoining lands to which no right is attached." *Adams,* 156 S.W.2d at 357. *See also Schmutzer v. Smith,* 679 S.W.2d 453, 455 (Tenn.App.1984). "In other words, an easement appurtenant to a dominant tenement can be used only for the purposes of that tenement; it is not a personal right, and cannot be used, even by the dominant owner, for any purpose unconnected with the enjoyment of his estate." *Adams,* 156 S.W.2d at 357. The dominant owner himself becomes a trespasser if he uses the easement to access property other than the dominant estate. "[I]f an easement is put to any use inconsistent with the purpose for which it was granted, the grantee becomes a trespasser to the extent of the unauthorized use." *Adams,* at 357.

The chancellor found the Defendant had an easement to access Tract IV via the "old road grade" across the second bridge as depicted on Tract V, with which we also

agree, but he will be required to close the entrance to Tract IV from Tract V.

This brings us to the issue of Plaintiff's damages. We first consider the spring. An easement for ingress and egress implies the right to maintain a passable way. *City of Whitwell v. White,* 529 S.W.2d 228, 235 (Tenn.App.1974). "It also implies the use of such way in such manner as to avoid unnecessary inconvenience to the owners of the subservient estate." *Id.* If the servient estate does not place the pathway, and no prior use had been made of the easement, the dominant owner may place it, "having due regard to the convenience of the landowner. The route should be determined not by the sole interest of either the owner or the landowner, but by the reasonable convenience of both. .... The use fixes the location." *Hill v. U.S. Life Title Ins. Co. of N.Y.,* 731 S.W.2d 910, 913 (Tenn.App.1986).

The Defendant had a way over his easement to access Tract III which he had been using since April, 1983. It was only after he purchased Tract IV that he constructed the new road. The easement was 50 feet in width but the new road as shown on Tract V, when measured according to the scale on exhibit #73 in the record, is approximately 12 feet wide. The record is silent as to any reason for the road's being placed on top of the spring. It cannot be contradicted that an open spring is a valuable asset to a rural tract of land such as the one owned by the Plaintiff.

In the prayer of her amended complaint, the Plaintiff asked that the Defendant be mandatorily required to remove the roadbed from the spring and the surrounding area. In her brief she insists she is entitled to that relief. This issue was not addressed by the chancellor but, since the damage or destruction of the spring was deliberate and shows reckless disregard for the Plaintiff's property, we find the Plaintiff is entitled to this relief.

On trial, the Plaintiff testified she considered the loss of the spring depreciated the value of her property between $3,400 and $3,800. In fixing his damages to the spring, the chancellor said: "Ms. McCam-mon basically testified that the aesthetics or the nostalgia associated with the spring were the things important to her; that she wanted to put a gazebo there or something of an attractive nature so that she could enjoy the spring. That basically cannot be done as the road presently exists. It's hard to place a value on nostalgia or aesthetics, and the Court is going to find that by virtue of the placement of this road and the grading in the area of the spring that Ms. McCammon had been damaged to the extent [of] $200."

We agree with the chancellor that the testimony of Mrs. McCammon was to the effect that the aesthetics of the spring to be utilized in connection with her new home was more important to her than to recover money damages. We feel this is a compelling reason why the Defendant should be mandatorily enjoined to remove the roadbed from the spring and surrounding area.

"If land can be restored to its original value by an expenditure of money and labor, the cost of such money and labor is the basic measure of damages." *Killian v. Campbell,* 760 S.W.2d 218 (Tenn.App.1988) at 222. "[W]hen the injury is permanent, any depreciation in the value of the property will be an element of damages, according to extent and duration of plaintiff's estate. An estimate of damages on this basis presupposes that the premises are subject to the same lasting detriment, and that it is not to be avoided or removed by any expenditure, for, otherwise, the injury would be measured upon different elements." *Citizens Real Estate v. Mountain States Development Corp.,* 633 S.W.2d 763 (Tenn.App.1981) at 766.

In the case of *Redbud Cooperative Corp., et al., v. Clayton,* 700 S.W.2d 551 (Tenn.App.1985) this court, in discussing the amount of damages to be awarded, quoted with approval as follows:

Our appellate courts have uniformly held that the measure of damages for injury to real estate is the difference between the reasonable market value of the premises immediately prior to and

immediately after injury but if the reasonable cost of repairing the injury is less than the depreciation in value, the cost of repair is the lawful measure of damages. [citation omitted] Of course, the trier of fact can also take into consideration the reasonable cost of restoring the property to its former condition in arriving at the difference in value immediately before and after the injury to the premises. [citations omitted] *Fuller v. Orkin Exterminating Co.*, 545 S.W.2d 103, 108 (Tenn.App.1975).

*Id.* 560.

In addition to the testimony of Mrs. McCammon as to the damages to her property for the loss of the spring, Mr. McCammon testified it would cost $500 to restore the fences which were destroyed by Mr. Meredith.

The decree of the chancellor will be modified to enjoin the Defendants from accessing Tract IV from Tract V and they shall be required to close the route by which they now enter from the new road. The Defendants will mandatorily be enjoined to remove the roadbed and restore the spring and surrounding area to its former condition. They shall further be required to restore the Plaintiff's fences to their former condition. Provided, however, proof may be heard to ascertain if restoration will exceed $4,000. If so, Plaintiff shall be awarded a judgment for $4,000 but will be permitted to restore her spring and fences.

To the extent the decree is not modified, it is affirmed. The cost of this appeal, together with all cost in the trial court, is taxed to the Appellees. The case is remanded to the trial court for the entry of a decree in keeping with this opinion.

GODDARD, J., and WILLIAM H. INMAN, Special Judge, concur.

APPENDIX