IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 3, 2000 Session

## BILLY CONATSER, ET AL. v. L.D. (JOE) BALL

**Appeal from the Chancery Court for Pickett County**
**No. 1784    Vernon Neal, Chancellor**

---

**No. M1999-00583-COA-R3-CV - Filed August 3, 2001**

---

This case involves a dispute over the scope of the right of the defendant to use the plaintiffs' property as a means of ingress and egress to various sections of the defendant's property. The deed to defendant's 1,600 acre tract, which surrounds plaintiffs' 151 acre tract on 3 sides, included a 26 foot wide north-south easement over plaintiffs' property. Plaintiffs alleged that defendant refused to confine his activities within the easement, thereby trespassing and committing waste upon their land. The trial court determined that defendant was entitled to use the 26 foot wide easement running in a north and south direction on the Conatsers' property and a second 20 foot wide route of ingress and egress branching off of the 26 foot easement in a northwesterly direction. The court rejected defendant's claim that he was entitled to a third easement along another east and west direction route and awarded plaintiffs $2,500 in damages for trespass. We affirm the trial court's rulings on the scope of defendant's easement and modify the damages to the $5000 originally awarded by the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed as Modified and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN. H. CANTRELL, P.J., M.S., and WILLIAM B. CAIN, J., joined.

Phillips M. Smalling, Byrdstown, Tennessee, for the appellant, L.D. (Joe) Ball.

James P. Romer, Jamestown, Tennessee, for the appellees, Billy Conatser and Pat Conatser.

**OPINION**

Billy and Pat Conatser own a 150 plus acre tract of bottom land running along Rotten Fork, a branch of the Wolf River near the Tennessee-Kentucky border. Their tract is surrounded on its western and northern boundaries by 1,600 acres belonging to L.D. (Joe) Ball, who runs a logging operation on his land. The 1,600 acre tract is mountainous and of a rather rough topography, whereas a large portion of the Conatser tract is flatter bottom land. Both parties' tracts were

originally purchased from Stearns Coal and Lumber ("Stearns"), the predecessor of Stearns Company, Ltd.

Pat Conatser's parents (the Smiths) purchased the tract of land from Stearns in 1965. The deed reserved to Stearns a 26 foot wide easement running north and south to be a used as a means of ingress and egress to the surrounding property. This easement more or less follows the bed of Rotten Fork Creek.

Rotten Fork curves in a north and south crescent through the length of the Conatsers' tract on the eastern side. Rotten Fork branches at the northern end of the Conatsers' property with Buckeye Lick Creek running northwesterly and Falling Water Creek running northeasterly. At the southern end of the Conatsers' tract, Rocky Creek (or Rocky River) runs east and west. The various routes of access discussed at trial were generally referred to by the names of these creeks.

Mr. Ball, a retired extension service agent, obtained an option to purchase his tract in 1992. Shortly thereafter, he met with Pat Conatser at her office to discuss his plans for use of his property. Mr. Ball purchased the 1,600 acre tract from Stearns. The same easement which was reserved for Stearns in the conveyance to the Smiths, and later to the Conatsers, was given to Mr. Ball in his deed.

Mr. Ball began logging his property by use of a route along Rocky Creek. He departed from the creek and bulldozed a road approximately 1600 to 1700 feet long by cutting up a mountain in the lower southwest corner of the Conatsers' property. According to plaintiffs, he also bulldozed a north-south road down almost the entire length of their tract nearly parallel to the original easement along the Rotten Fork creek bed, built another northeast-northwest road along Buckeye Lick Creek on the north end of their tract, and piled logs on the Conatsers' property after being asked not to do so.

The Conatsers filed the underlying action alleging that Mr. Ball refused to confine his activities to the north-south easement and committed waste and trespass on their land. Their complaint alleged that Mr. Ball was cutting trees, constructing roads, and piling wood on their land after being asked to desist. They claimed that Mr. Ball's actions had caused erosion and sought an injunction and damages. They did not contest Mr. Ball's right to use the easement along Rotten Fork as stated in the deeds.

At the close of the evidence, the trial court concluded that Mr. Ball had nothing other than the 26 foot easement reserved in the deed, a north-south route generally along Rotten Fork. Thus, Mr. Ball had no rights to use the east-west route along Rocky Creek or to cut a road up a hillside on the Conatsers' property from the Rocky Creek route. The court granted the Conatsers $5,000 in damages for the injuries resulting from the trespass. The court memorialized this holding in its first final decree filed September 19, 1994. In that order, the court found that Mr. Ball had certain routes of ingress according to the deed reservation. Because the parties had disagreed as to the exact

location or path of this route, the court suggested and the parties agreed that the Stearns land agent, who had testified, establish the route. A survey to memorialize the route was agreed to.

After Mr. Ball filed a motion to alter or modify final judgment or for a new trial, and after a hearing on the motion, the court entered another order on July 21, 1995. The trial court found that Mr. Ball was entitled to the 26 foot easement and specified exactly where the easement was located, based on the survey. The court also found that Mr. Ball had a 20 foot wide right of ingress and egress along Buckeye Lick Creek running in a northwesterly direction from the original easement to be used "for the reasonable uses associated with logging and timber operations exclusively and for no other purpose." The court again affirmed that Mr. Ball had trespassed by "piling logs, bulldozing a roadway, and destroying trees and bushes," but reassessed the damages at $2,500. The court enjoined Mr. Ball from straying from the indicated easement, gave him 90 days to remove the timber he had already cut by way of the Rocky Creek route, and determined that Mr. Ball should pay two-thirds and the Conatsers one-third of the costs of the survey.

This court twice dismissed notices of appeal filed in this case because no final order resolving all the issues had been entered. The trial court issued its last final order which disposed of all the issues including a third party complaint by Mr. Ball against Stearns.[1] That order, entered April 28, 1999, stated that the last decree would become the final order, but additionally noted that the claims against Stearns contained in the third party complaint were dismissed, thereby disposing of all the issues in the case. Mr. Ball then commenced his appeal.

## I. Standard of Review

This is an appeal from a decision made following a bench trial. Accordingly, the familiar standard set forth in Tenn. R. App. P. 13(d) governs our review. We must review the record *de novo* under the presumption that the findings of fact are correct "unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). No presumption of correctness attaches to the trial court's conclusions of law. *Hansel v. Hansel,* 939 S.W.2d 110, 111 (Tenn. Ct. App. 1996). Additionally, the weight given to a witness's testimony lies in the first instance with the trier of fact, and this court must accord great weight to the trier of fact's decisions on issues of credibility. *Randolph v. Randolph,* 937 S.W.2d 815, 819 (Tenn. 1996); *Mays v. Brighton Bank*, 832 S.W.2d 347, 352 (Tenn. Ct. App. 1992); *Sisk v. Valley Forge Ins. Co.*, 640 S.W.2d 844, 849 (Tenn. Ct. App. 1982).

## II. Issues Regarding Easement

This lawsuit involved the scope of Mr. Ball's rights to use the Conatsers' land to access his large timber tract. The scope and location of the 26 foot wide north-south right of way along Rotten Creek and along the two creek branches at its northern end are no longer at issue. What is at issue is Mr. Ball's right to use other routes across the Conatsers' property to access his land. Specifically

---

[1]Mr. Ball had sued his predecessor in title regarding representations of the rights conveyed in his deed. These issues were not tried, and the Third Party Complaint was eventually dismissed by agreement.

at issue is his right to use the east-west Rocky Creek route and to build a road northward from the creek up the mountainside, all on the Conatsers' property. He took those actions and was found to have trespassed in doing so. He was also enjoined from using any route across the Conatsers' land except the one described in the order.

Mr. Ball's position prior to and throughout this litigation has been that he had a right to cross the Conatsers' land and build roads wherever and to the extent he needed in order to gain economically reasonable access to his land for logging purposes. He asserts and has asserted that he is not limited to one route for access and egress. He explained his large tract could reasonably be described as up to five tracts, each requiring a different route of access. He also asserts that, although he is entitled to an apparently unlimited number of access routes if they are needed, he only wants one route to access each distinct area of his tract "and no more." He bases his theory on his interpretation of the deed to him from Stearns and the Conatsers' deed. He testified that he did not ask permission from the Conatsers for the work he did in building or improving passageways across the Conatsers' land, including the road along Rocky Creek and up their hillside, because he had the right to make such improvements.

While he maintains he has the right to as many routes of access as he needs, he specifically claims the right to the Rocky Creek route and the right to cut a road from the creek, across the Conatsers' land, up their less steep slope to get to his land. In addition to relying on his interpretation of the deeds for these rights, he also claims the Conatsers are estopped from denying him access along Rocky Creek.

The Conatsers describe Mr. Ball's original position as maintaining he could access his property through the Conatsers' property more or less at will as he determined he needed. The trial court shared that impression of Mr. Ball's original arguments, stating, "I don't understand where he's got this idea that he can just go off in about any direction he wants to." Mr. Ball says he got that idea from the deeds.

### III. Easement According to Conveyance in the Deeds

An easement is an interest in another's real property that confers on the easement holder an enforceable right to use that real property for a specific use. *Bradley v. McLeod*, 984 S.W.2d 929, 934 (Tenn. Ct. App. 1998) (citing *Brew v. Van Deman*, 53 Tenn. (6 Heisk.) 433, 436 (1871)). In Tennessee, easements can be created in several ways: "(1) express grant, (2) reservation, (3) implication, (4) prescription, (5) estoppel, and (6) eminent domain." *Pevear v. Hunt*, 924 S.W.2d 114, 115-116 (Tenn. Ct. App. 1996). Mr. Ball relies upon the grant to him by Stearns of the easement it reserved in its earlier deed to the Conatsers' predecessor in title. When an easement arises from a grant or reservation in a deed, the extent of the easement is determined by the language of the grant or reservation. *Foshee v. Brigman*, 174 Tenn. 564, 567, 129 S.W.2d 207, 208 (Tenn. 1939).

The deed from Stearns to Mr. Ball stated in pertinent part:

The Grantor hereby conveys to the Grantees such rights of ingress and egress as it acquired in the case of *The Stearns Company and Charles Beaty vs. Chloe Buck*,[2] being Civil Action No. 1512 in the Chancery Court of Pickett County, Tennessee, along with such *rights as it may have reserved in a deed from Stearns Coal and Lumber Company to J.E. Smith and wife, Georgia Smith*, by deed recorded in Deed Book 16, Page 274 of the Register's Office of Pickett County, Tennessee as may be *necessary for ingress and egress* to the above-described tract of land, however, reserving unto the Grantor so much of that easement that Grantor reserved in said deed from Stearns Coal and Lumber Company to J.E. Smith and wife, Georgia Smith, for purposes of ingress and egress across the lands of J.E. Smith and wife, Georgia Smith, as Grantor may need.

(emphasis added).

Mr. Ball argues that this deed gives him the right to access the Conatsers' property "as necessary for ingress and egress" to the tract of land conveyed in the deed, his 1600 acre parcel. That interpretation overlooks the words of grant, however, which purport to convey only those rights Stearns had reserved in the deed to the Smiths. It is axiomatic that the Grantor, here Stearns, can convey no greater rights or interests than it owns. *Sloan v. Sloan*, 182 Tenn. 162, 165, 184 S.W.2d 391, 392 (1945); *Lisenbee v. Parr*, 62 Tenn. App. 518, 525, 465 S.W.2d 361, 365 (1970). The deed from Stearns to the Smiths, and later to the Conatsers, stated in pertinent part:

Reserving, however, unto the grantor, its successors and assigns, and excluding from this conveyance, a *right-of-way* over and across the above described tract of land *extending from the south boundary line thereof to the north boundary line thereof*, running *in general the same direction and course as the present passway or roadway used over same*, and so as *to provide ingress and egress* to other lands owned by the grantor adjacent to the above described tract, which said right-of -way so reserved shall be *twenty-six (26) feet in width*, which shall be used by grantor, its successors and assigns, free of obstruction or cost for a passway or road, for persons, trucks or other vehicles as and when desired, . . .

(emphasis added).

Again, Mr. Ball interprets this language as giving him the right to access his tract by crossing the Conatsers' land "as and when desired." Mr. Ball asserts that these deeds reserve to him the right

_____

[2]The deed to Mr. Ball from Stearns also conveys rights of ingress or egress acquired by Stearns in litigation against Chloe Buck. There was a great deal of testimony regarding whether a road found to exist in the *Chloe Buck* case extended into the Conatsers' tract. The trial court determined that the *Buck* case did not involve the property conveyed to the Smiths and later to the Conatsers or any easements thereon. On appeal, Mr. Ball no longer asserts that the Chloe Buck language in the deed gives him any rights of access across the Conatsers' property.

to access any of his property through the Conatsers' land. Relying on the phrases which allow the use of the easement "for persons, trucks or other vehicles as and when desired" and "as necessary for ingress and egress," Mr. Ball essentially argues that he is entitled to use passways across the Conatsers' land to reach his land if that is desired or necessary. He defines necessary in terms of the economic feasibility of use of his tract. He describes his 1,600 acre tract as being able to be divided into five distinct areas surrounding the Conatsers' property in a rainbow like fashion. He maintains that he "wanted one route to access each distinct area of his 1,600 acre tract and no more." He explained at trial it would not be economically feasible to get logs from the area on the far south-west of his parcel and remove them by having to go through the other areas of his tract to the north-south easement entry point. Mr. Ball conclusively asserts, not citing any evidence in the record, that Stearns intended to maintain access to the vast area of land surrounding the Conatsers so that Stearns or its successor could log such property, or divide the property and sell it. We share the trial court's wonderment at this interpretation.

Stearns owned all of the property Mr. Ball purchased surrounding the Conatsers on the west, north and east side and reserved only one access route to that property when it conveyed a parcel to the Smiths. The "as and when desired" language does not mean that the holder of the easement may create entirely new ones as and when desired, but instead means that Mr. Ball may use the single easement reserved as and when desired consistent with its purpose.

We agree with the trial court that the reservation and grant convey a 26 foot wide right of way for ingress and egress running in a north to south direction over an area where, at the time of the conveyance from Stearns to Smith, a roadway or passway existed. This easement is not restricted in nature and may be used by "grantor, its successors and assigns . . . for persons, trucks or other vehicles as and when desired." The deed cannot be read to allow for any new and additional easements, such as the east-west easement along Rocky Creek which Mr. Ball created and used. As the trial court noted, Mr. Ball "can't just run off in every direction on other people's land because it makes it more convenient to log his particular land."

The owner of an easement "cannot materially increase the burden of it upon the servient estate or impose thereon a new and additional burden." *McCammon v. Meredith*, 830 S.W.2d 577, 580 (Tenn. Ct. App. 1991) (citing *Adams v. Winnett*, 25 Tenn. App. 276, 156 S.W.2d 353, 357 (1941)). In *McCammon*, Mr. Meredith owned an easement over Ms. McCammon's property to access a specific tract of land. He built another road outside that easement to access a different tract he owned, destroying fences and vegetation, erecting gates, and paving over a spring. This court found Mr. Meredith did not have a prescriptive easement for the new road he built, and could not increase the burden on Ms. McCammon's land from the easement he had been granted.

We affirm the trial court's holding that the deeds granted Mr. Ball only one defined right of way. The extent and location of that right of way is no longer in dispute.

## IV.  Easement by Estoppel

Alternatively, Mr. Ball argues that in his logging operation he was entitled to use the Rocky Creek route through the Conatsers' property under the doctrine of equitable estoppel.  Relying on *Malloy v. City of Chattanooga*, 191 Tenn. 173, 232 S.W.2d 24 (1950), he maintains that only after Pat Conatser agreed that he could use the route, he bought the 1,600 acre piece of property and upgraded and built roads on the Conatser tract in reliance on her assent.

> Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting a right which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract, or of remedy. . . . It is not absolutely necessary that the conduct mentioned in the first subdivision should be done with a fraudulent purpose or intent, or with an actual and fraudulent intention of deceiving the other party.

*Church of Christ v. McDonald*, 180 Tenn. 86, 171 S.W.2d 817, 821 (1943) (quoting POMEROY'S EQUITY JURIS., Vol. 3, p. 193-94); *Douglass v. Rowland*, 540 S.W.2d 252, 254-55 (Tenn. Ct. App. 1976).

Therefore, at a very minimum, estoppel requires "(1) reliance upon the statement or actions of another without opportunity to know the truth and (2) action based on that reliance which results in detriment to the one acting." *Werne v. Sanderson*, 954 S.W.2d 742, 746 (Tenn. Ct. App. 1997) (citing *Campbell v. Precision Rubber Prod. Corp.*, 737 S.W.2d 283, 286 (Tenn. Ct. App. 1987)).

In this case, Mr. Ball was unable to prove that he detrimentally relied on the conversation with Pat Conatser.  Determinative of this is the testimony of Mr. Ball himself regarding what was discussed at the meeting with Pat Conatser:

> Q: Did you specifically discuss the route of Rocky Creek?
> A: No, sir, we did not.
>
> \*\*\*\*\*
>
> Q: Now, Mrs. Conatser testified about a discussion wherein she interpreted the discussion to say that you wanted to swap your way to get to Falling Water for this route to Rocky Creek.  What do you remember about that conversation?
> A: I don't recall any specifics about a route to Rocky Creek.  I did meet with Mr. and Mrs. Conatser at their home in their back yard and told them that I would like to rent a plot of ground adjacent to the gate going into the Conatser property for the purpose of storing logs.

Later, when describing the route taken and how he went about constructing the roadway along Rocky Creek and up the hillside, Mr. Ball testified:

Q: And you didn't tell the Conatsers that you were going to do that?
A: I did not tell the Conatsers that I was going to go through their property anywhere.
Q: I see.
A: I didn't ask them could I go through their property.
Q: I see.
A: Because I had an easement.
                              *****
Q: You say you went and talked to Pat about going up the mountainside there?
A: No, sir. Not in a specific location up the mountain.

This testimony is consistent with Mr. Ball's position, evident elsewhere in his testimony and his brief, that he interpreted the deeds as giving him the right to access routes across the Conatsers' property as he needed them. He did not think he needed the Conatsers' permission to create roads or passageways across such routes or to improve them. He testified he was aware he needed to be sensitive to the Conatsers' interest, and that he went to talk to Ms. Conatser to assure her he would use environmentally sound methods and would act in both their interests.

Therefore, based upon his own statements, Mr. Ball cannot show that he relied on any permission, assent, or grant of access from the Conatsers. In deciding to purchase the 1600 acre tract, he relied on his own interpretation of the rights granted him in the deed.[3]

Although Mr. Ball was certain he never spoke to either of the Conatsers about using the Rocky Creek route, Pat Conatser testified to such a conversation. She interpreted Mr. Ball's remarks about the Rocky Creek route being "less trouble, it was shorter to his land, and less damage to me, if he went along the side of the creek" and as a request to swap the Rotten Fork easement set out in the deed for one along Rocky Creek. Although she admitted Mr. Ball did not specifically state that he was asking to trade one route for the other, that was her interpretation of the conversation. Based on that understanding, she agreed, she thought, to his use of the Rocky Creek route. Such agreement, however, did not include giving Mr. Ball the right to leave the route by the creek and cut a road 1600-1700 feet up a slope on her land. She testified Mr. Ball agreed to "staying close to the creek bank. I would never have agreed if he had said to go out in the field" and up the side of the mountain.

Because Mr. Ball is the party attempting to use the defense of estoppel, he has the burden of proving all the elements. *Jenkins Subway, Inc. v. Jones*, 990 S.W.2d 713, 723 (Tenn. Ct. App.

---

[3]There is some testimony about Mr. Ball's consultation with an attorney prior to his purchase. He attempts to argue that after that consultation, "since the granting language of the deed as quoted did not include a specific description of a route, Ball took reasonable and prudent steps to assure himself of what rights he had before consummating the transaction [by talking to Mrs. Conatser]." However, his testimony is not consistent with such an argument with regard to use of the Rocky Creek route.

1998); *Bokor v. Holder*, 722 S.W.2d 676, 680 (Tenn. Ct. App. 1986). By his own testimony, he has failed to establish that he relied on any grant of permission to use the Rocky Creek route. Even considering Ms. Conatser's testimony, he has failed to demonstrate an assent to his use of the Rocky Creek route in addition to the north-south route established in the deed. There is absolutely no proof of any assent to his cutting a new road from the Rocky Creek route up a slope on the Conatsers' property.

Therefore, Mr. Ball has failed to establish the elements required to establish estoppel. Consequently, the Conatsers are not estopped from denying him the right to use or create an access route along Rocky Creek or across their land from the creek northward. The judgment of the trial court is affirmed on this issue.

## V. Damages

Because Mr. Ball's rights to ingress and egress across the Conatsers' property were limited to the north-south easement granted in the deeds, his entry on, use of, and improvement to any other portion of their land was trespass. *McCammon v. Meredith*, 830 S.W.2d at 580. "If an easement is put to any use inconsistent with the purpose for which it is granted, the grantee becomes a trespasser to the extent of the unauthorized use." *Id.* (quoting *Adams v. Winnett*, 156 S.W.2d at 357). Therefore, the trial court correctly determined that Mr. Ball was liable for damage caused by his trespass.

The record establishes that Mr. Ball created a road for logging which left the east-west Rocky Creek route and headed north through the Conatsers' land, crossing a field and going up a mountainside, eventually reaching his tract. In building that road he bulldozed trees and removed other vegetation. He testified he took precautions by putting in water bars to lessen erosion and planted grass and corn. Others testified that erosion would occur, damaging the slope and the fields below if the damage was not restored.

Mr. Parris testified as to the work which would need to be done to restore the land to its previous condition. He testified that if the damage were not addressed soil would wash down to the field below and erosion would continue. The Conatsers also called Rodney Foy, a registered land surveyor, to testify to the condition of their property and the extent of damage. He testified that a trail had been bulldozed out and that erosion will occur.

The fact there was damage to the Conatsers' property was, therefore, proved. More problematic, however, is the question of whether the proof supports the court's award of damages under the appropriate measure. The trial court initially awarded $5,000 in damages, but later reduced the award to $2500 after Mr. Ball filed his motion to alter the judgment.

Mr. Ball asserts that the Conatsers failed to carry their burden of proof regarding damages and, consequently, are entitled to no monetary judgment. Mr. Ball asserts that the proper measure of damages for injuries to real property is the difference in the fair market value before and after the

injury or the reasonable costs of repairing the injury, whichever is less, relying on *Fuller v. Orkin Exterminating Co., Inc.*, 545 S.W.2d 103 (Tenn. Ct. App. 1975). According to Mr. Ball, the Conatsers were required to prove both amounts so that the "whichever is less" comparison can be made. Mr. Ball asserts the Conatsers provided an inflated and speculative estimate of the cost to restore their land and provided no proof regarding the diminution in its value. This failure, according to Mr. Ball, precludes their recovery of any damages.

The Conatsers, on the other hand, maintain that they presented evidence of the cost to repair the damage caused by Mr. Ball's cutting the road up their hillside, $39,000 to $40,000, that greatly exceeded the amount awarded by the trial court. They argue the evidence of the cost of repair was not speculative but was based in part on estimates and that Mr. Ball offered no rebuttal proof of a lesser cost. The Conatsers further maintain that the proper measure of damages is the reasonable cost of restoration of any physical injury to the land, citing *Citizens Real Estate & Loan Co., Inc. v. Mountain States Dev. Corp.,* 633 S.W.2d 763 (Tenn. Ct. App. 1981). Pursuant to Tenn. R. App. P. 13(a), the Conatsers ask this court to award them up to $40,000 in damages. Because Mr. Ball offered no proof on any alternative measure of damages, they assert he cannot now complain of the use of their measure.

The general rule for the measure of damages for trespass is:

> The cost of restoring the property to its condition prior to the injury caused by a trespass is an alternative to the measure of diminution of market value, where the injury to the land resulting from the trespass is temporary and subject to restoration, unless such cost is equal to or exceeds the market value of the affected property, or is disproportionate to or greater than the diminution in value of the property. Damages for restoration or replacement are limited to situations where replacement or restoration costs are feasible and reasonable.

75 AM. JUR. 2d, *Trespass* § 137 (1991).

In *Redbud Coop. Corp. v. Clayton*, 700 S.W.2d 551 (Tenn. Ct. App. 1985), this court found there was proof in the record to show that the owners of houses in a development had suffered damages as a result of the developer's failure to construct a drainage system in accordance with its original drainage plan. Although liability in *Redbud Coop. Corp.* was not based on trespass, the court's discussion of damages is instructive:

> Our courts have approached the question of the measure of damages for injury to real property from several different directions. They have, in the past, drawn distinctions between damages for injuries to the land itself as opposed to improvements on the land. They have also drawn distinction between injuries that are permanent as opposed to those that are "remediable." In an attempt to reconcile these precedents, Judge Carney has stated:

> Our appellate courts have uniformly held that the measure of damages
> for injury to real estate is the difference between the reasonable
> market value of the premises immediately prior to and immediately
> after injury but if the reasonable cost of repairing the injury is less
> than the depreciation in value, the cost of repair is the lawful measure
> of damages. Of course, the trier of fact can also take into
> consideration the reasonable cost of restoring the property to its
> former condition in arriving at the difference in value immediately
> before and after the injury to the premises.

*Id*. at 560-61 (quoting *Fuller v. Orkin Exterminating Co.*, 545 S.W.2d 103, 108 (Tenn. Ct. App. 1975)) (internal citations omitted).

In *Redbud*, this court also determined that the only reasonable basis upon which the trial court could have awarded damages was the cost of repairing the development's inadequate drainage system. 700 S.W.2d at 561. This conclusion was based upon (1) the fact that it would have been impractical to attempt to calculate the exact extent of damage to each home in the development with any degree of precision, since the experts testified that the diminution in value arose from a decrease in competitive attractiveness; (2) the inadequate drainage system was causing damage to the development's common areas, which had no market value; and (3) based on the developer's proof of recent sales prices of homes in the development, it would have been reasonable for the trial court to conclude that the cost of repairing the drainage system was less than the diminished market value of all homes in the development. *Id*. Thus, we concluded that the trial court was justified in awarding damages based on the estimated cost of repairing the drainage system, noting, "in this case [such evidence] was the only reliable evidence before the trial court." *Id*.

In *Killian v. Campbell*, 760 S.W.2d 218, 222 (Tenn. Ct. App. 1988), this court stated that the cost of restoration is the proper measure of injuries to land where such restoration is possible. In that case, the defendants made improvements or alterations to real property of another by creating a roadway and a pad and utilities for a mobile home. These actions were performed pursuant to a deed which was later set aside. This court stated the proper measure of damages as:

> If an injury to the land is permanent, any depreciation in the value will be an element
> of damages. If the land can be restored to its original value by an expenditure of
> money and labor, the costs of such money and labor is the basic measure of damages.
> Other elements might be present for consideration.

*Id*. (citing *Citizens Real Estate & Loan Co., Inc. v. Mountain States Dev.*, 633 S.W.2d 763 (Tenn. Ct. App. 1981)). While the court set forth this standard, it found no need to apply it in *Killian* because no proof had been produced regarding the nature of the injuries (permanent or restorable), the depreciation in the value after the injuries, or the cost to repair the injuries. *Id*.

In *Cole v. Clifton*, 833 S.W.2d 75 (Tenn. Ct. App. 1992), a trespass case, this court recognized that at least one party saw a need to reconcile the *Killian* holding with that of *Fuller v. Orkin* and *Redbud*. The plaintiffs in *Cole* framed the issue as

> "[W]hether the measure of damages for trespass to land [is] the cost of restoration of the land, or the diminution in value to the land, or the lesser of the two; and if it is the law that the measure of damages is the lesser of the two, must the plaintiffs prove both measures?"

*Id*. at 76.

Unfortunately for the case before us, the court in *Cole* declined to resolve that issue or "to rule on any potential conflict between *Killian* and *Fuller*". *Id*. at 77. Instead, the court affirmed the trial court's finding that the plaintiff had not proved damages by a preponderance of the evidence. *Id*.

In a later case, *McCammon v. Meredith*, 830 S.W.2d 577, this court considered the proper measure of damages for trespass in building a road over a spring, which trespass the court characterized as deliberate and showing reckless disregard for the owner of the property. The plaintiff had asked for a mandatory injunction requiring the trespasser to remove the roadbed and from the spring and surrounding area.

In *McCammon*, the court recognized the various measures of damages explained in *Redbud Coop. Corp.*, but also relied on *Killian* for the proposition "If land can be restored to its original value by an expenditure of money and labor, the cost of such money and labor is the basic measure of damages." 830 S.W.2d at 581. The court also quoted the standard from *Citizens Real Estate & Loan Co., Inc. v. Mountain States Development Corp.*, 633 S.W.2d 763 (Tenn. Ct. App. 1981), "[w]hen the injury is permanent, any depreciation in the value of the property will be an element of damages, according to the extent and duration of plaintiff's estate. An estimate of damages on this basis presupposes that the premises are subject to the same lasting detriment, and that it is not to be avoided or removed by any expenditure, for, otherwise, the injury would be measured upon different elements." *Id*.

This court found the plaintiff's testimony that the aesthetics of the spring in connection with her use of her property were more important to her than recovery of any monetary damages was a compelling reason for requiring the trespasser to remove the roadbed. *Id*. This court ordered that the trespasser be mandatorily enjoined to remove the roadbed and restore the spring and surrounding area to its former condition, "[p]rovided, however, proof may be heard to ascertain if restoration will exceed $4,000." *Id*. at 582. If restoration costs were shown to exceed that amount, plaintiff was to be awarded $4,000 in damages. *Id*. Plaintiff had testified that the loss of the spring depreciated the value of her property between $3400 and $3800. *Id*. at 581.

-12-

In the case before us, the Conatsers presented testimony from Mr. Parris who had been asked to prepare an estimate for the cost of restoring the damage to the Conatsers caused by the road from the Rocky Creek route up the hill. Mr. Parris based his repair estimate of $39,000 to $40,000 on costs of labor and equipment, including a track hoe at an hourly rate of $150, as well as replacement trees. He testified that this figure would be a high estimate and included costs of other subcontractors to do things such as plant the trees. As with all estimates, he acknowledged that the actual time required and resulting cost could differ from the estimate.

Mr. Ball asserts that this evidence of the cost of repair is insufficient to support the damages award because the witness was not a land appraiser, timber buyer or other reliable source of knowledge and admitted his estimate of the repair costs was speculative. However, in *Redbud Coop. Corp.*, this court discussed the specificity needed in establishing the amount of damages. While recognizing that uncertain, contingent, or speculative damages should not be awarded, we stated:

> uncertain or speculative damages are prohibited only when the existence of damages is uncertain not when the amount of damage is uncertain. All that an award for damages requires is proof of damages within a reasonable degree of certainty.

700 S.W.2d at 561. (internal citations omitted). In a footnote, we recognized that an award can be based upon estimated costs of repair. *Id*. at 561 n.20 (citing *City of Knoxville v. Peebles*, 19 Tenn. App. 340, 87 S.W.2d 1022 (1935)). We find that the Conatsers' proof regarding the cost of repair of the damage done by Mr. Ball's trespass is within a reasonable degree of certainty. Although Mr. Ball cross-examined Mr. Parris about his evidence, he presented no other evidence of the cost of repair.

Mr. Conatser testified that the fair market value of his 150 acre tract was $150,000.[4] The Conatsers presented no testimony as to the value of the property before and after the injury or the depreciation in value due to the injuries. Mr. Ball presented no such proof either. In this appeal, Mr. Ball asserts that the Conatsers' failure to prove any decrease in value in their land due to his trespass is fatal to their request for damages. Essentially, he asserts that the measure of damages to real property is calculated by a two-pronged test and that it was the Conasters' burden to prove both prongs.

This court resolved that issue in *Nutzell v. Godwin*, no docket no., 1989 WL 76306 at *1 (Tenn. Ct. App. July 13, 1989) (no Tenn. R. App. P. 11 application filed), wherein the defendant made the same argument that Mr. Ball makes: that in a case involving damage to real property the plaintiff is required to offer proof on both factors (cost of repairs and diminution in value) so that the court or the jury can choose. We stated:

---

[4]Although it is not entirely clear from the testimony, it appears that the Conatsers also paid Mrs. Conatser's brother $75,000 for his interest in a larger tract, which included the 150 acre tract in question.

-13-

We hold that the plaintiffs do not have the burden of offering alternative measures of damages. The burden is on the defendant to show that the cost of repairs is unreasonable when compared to the diminution in value due to the defects and omissions. This reasoning is consistent with that of the Texas courts in *Greene v. Bearden Enterprises, Inc.*, 598 S.W.2d 649 (Tex. Civ. App. 1980) which dealt with a similar factual situation. Other states have applied the same logic applying this measure of damages. *A.I.D. Insurance Services v. Riley*, 25 Ariz. App. 132, 541 P.2d 595 (1975); *Engel v. Dunn County*, 273 Wis. 218, 77 N.W.2d 408 (1956). Because the burden to produce an alternative measure of damages was on the defendant who failed to meet that burden, proof of repairs alone was a sufficient basis on which to submit the question of damages to the jury.

*Id*. at *1-2. *See also Oakwood Furniture Mfg., Inc. v. RUH & Pressley Constr. Co., Inc.*, No. 03A01-9307-CH-00233, 1993 WL 477020 (Tenn. Ct. App. Nov. 15, 1993) (no Tenn. R. App. P. 11 application filed). Therefore, the Conatsers were not required to prove the diminution in value of their land due to Mr. Ball's trespass. Mr. Ball was required to present such proof if he wanted the court to apply that measure.

Mr. Ball's trespass caused damage to the Conatsers' land which can be repaired. Without such repair, continuing damage will be caused through erosion. Therefore, the proper measure of damages was the *reasonable* cost of repair, *Citizens Real Estate & Loan Co., Inc. v. Mountain States Dev. Corp.*, 633 S.W.2d at 767, unless such cost is disproportionate to or exceeds the diminution in value or is disproportionate to or exceeds the market value of the affected property. Because there was no proof regarding the diminution in value, the trial court could properly consider the proportionality of the cost of repair to the market value of the affected property. In determining an appropriate and reasonable amount of damages, the court was entitled to consider the nature of the injury, the portion of the land damaged and the effect of damage of that portion on the entire tract, the market value of the entire tract or the portion damaged, and the costs of repair. In considering those factors, the trial court originally assessed damages at $5,000.

The evidence showed that Mr. Ball cut a road of 1600 - 1700 feet in length across a field and up a slope, causing injury to the land and creating a condition allowing continuing injury. The trial court limited the amount for repairs presumably because of the disproportionality of the estimated cost, $39,000 - $40,0000, to the market value of the entire 150 acre tract, $150,000. We find no error in the trial court's award of $5,000 in damages in view of the evidence and record before it.

The trial court later decreased the judgment to $2,500, and the record includes no explanation for the change. The only indication we have for the court's rationale is Mr. Ball's motion to alter or amend the judgment wherein Mr. Ball argued:

The court erred in entering judgment in the amount of $5,000.00 (Five thousand dollars). The only testimony as to damages was presented through Jerry Parris. The evidence was not competent in that the witness could not answer any questions as to

-14-

how he calculated damages and further testified that he was merely giving a guess. It is averred that the amount of $5,000.00 (Five thousand dollars) would represent a substantial portion of the fair market value of the entire Conatser tract when only arguably an acre or two of property was damaged at most. The correct calculation of damage would be the fair market value of a small portion of hillside.

We have already dispensed with Mr. Ball's complaints about the speculative nature of the testimony regarding the cost of repair. Although he argues that the correct calculation would be the value of only a small portion of the hillside, he cites and we find no authority for that position. Such an argument assumes there is a fair market value for only that portion and that the size of the affected portion has been identified. In view of the fact there was no evidence regarding the potential for differing values per acre of different portion of the 150 acre tract, it apparently also assumes all acres are valued the same. Because the trial court's original judgment was supported by the record when the applicable measure of damages is applied and all relevant factors considered, and because the record provides no evidence or justification for the reduction after Mr. Ball's motion, we modify the final judgment to award the Conatsers $5,000 in damages.

## VI. Frivolous Appeal

Finally, the Conatsers maintain that because no law supports Mr. Ball's contention that he is granted an easement according to the language of the deeds, and because the damages issue was only an afterthought, Mr. Ball's appeal is frivolous. Mr. Ball did not respond to this issue.

Tenn. Code Ann. § 27-1-122, governing frivolous appeals, provides:

When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

However, an award of damages under § 27-1-122 is discretionary. *Banks v. St. Francis Hosp.*, 697 S.W.2d 340, 343 (Tenn. 1985).

It is well settled that neither a party, nor this court, should have to bear the costs and vexation of a meritless appeal. *Jackson v. Aldridge*, 6 S.W.3d 501, 504 (Tenn. Ct. App. 1999) (citing *Davis v. Gulf Ins. Group*, 546 S.W.2d 583, 586 (Tenn. 1977); *McDonald v. Onoh*, 772 S.W.2d 913, 914 (Tenn. Ct. App. 1989)). An appeal is considered frivolous if there is no reasonable chance of success or is devoid of merit. *Id.* (citing *Davis*, 546 S.W.2d at 586; *Industrial Dev. Bd. of Tullahoma v. Hancock*, 901 S.W.2d 382, 385 (Tenn. Ct. App. 1995)); *Bursack v. Wilson*, 982 S.W.2d 341, 345 (Tenn. Ct. App. 1998) (citing, among others, *Liberty Mut. Ins. Co. v. Taylor*, 590 S.W.2d 920 (Tenn. 1979) and *Wilson v. Ricciardi*, 778 S.W.2d 450 (Tenn. Ct. App. 1989)); *Combustion Eng'g, Inc. v. Kennedy*, 562 S.W.2d 202, 205 (Tenn. 1978).

We do not find the appeal to be frivolous.  All the issues raised by Mr. Ball were not without legal merit.

### VII.  Conclusion

For the reasons stated herein, we affirm the trial court's judgment in all respects regarding the grant of the easement to Mr. Ball along Rotten Fork and Buckeye Lick Creek and the denial of use of Rocky Creek.  We modify the trial court's award of damages by vacating its final order on damages and reinstating the judgment entered after trial, awarding the Conatsers $5,000 in damages.  Costs of this appeal are taxed to the Appellant, Mr. Ball.

_____
PATRICIA J. COTTRELL, JUDGE