IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 10, 2003 Session

## BILLY CULP AND LOIS CULP v. BILLIE GRINDER AND HELEN GRINDER

**Appeal from the Chancery Court for Wayne County**
**No. 10503     Jim T. Hamilton, Chancellor**

---

**No. M2002-01512-COA-R3-CV - Filed June 25, 2003**

---

The Culps brought suit against their neighbors, the Grinders, for removal of a septic tank solid line located on their property. The Culps argued that the ten foot easement reserved by the subdivision for "utilities" did not include personal septic tanks. The trial court dismissed the suit and found that the septic tank solid line placement was a type of "utility" and was within the ten foot easement; further, the court found no damages had been suffered by the Culps. We affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which WILLIAM B. CAIN, JUDGE and CAROL L. McCOY, SP. J., joined.

W. Andrew Yarbrough, Waynesboro, Tennessee, for the appellants, Billy Culp and Lois Culp.

George Gray, Waynesboro, Tennessee, for the appellees, Billie Grinder and Helen Grinder.

**OPINION**

This suit arose when Billy and Lois Culp filed suit against their neighbors, Billie and Helen Grinder, who live across the street, seeking the removal of a septic tank solid line which the Culps claimed encroached on their property to the extent that it was causing damage to their property. The Culps sought only the removal of the solid line.

In July of 1989, Ronie and Ines Lopez purchased Lot 2, Section 3 of the Beechview Recreation Development ("Beechview"), a subdivision which also had campsites and recreational

facilities. In May of 1991, J.B. and Mildred Hinson, the owners of Lot 2, Section 2,[1] were conveyed a Perpetual Field Line Easement, granting a perpetual easement on Lot 2, Section 3 of Beechview Recreation Development, and in February of 1992, Beechview conveyed to J.B. Hinson and Tommy Hickerson a Perpetual Field Line Easement. Both easements were created for the purpose of installing and maintaining a field line to service the septic tank on Lot 2, Section 2 of Beechview and were properly recorded.[2] The septic tank system was constructed. The Grinders purchased Lot 2, Section 2, from the Hinsons in 1999, and the Culps purchased Lot 2, Section 3 in 1997.

In August of 1999, the Culps brought suit against the Grinders. The suit sought removal of the septic tank pipeline which begins in the Grinders' front yard, runs under the road, and then proceeds approximately one foot inside the western boundary of the Culps' property for some distance before branching off onto unrelated property. The Culps alleged that Beechview had no authority to grant the easement and that the Grinders had not been using the property for the requisite amount of time to establish adverse possession. In making their request for relief, the Culps acknowledged that Beechview had granted Perpetual Field Line easements to the prior owner of the Grinder property for the specific purpose of running the solid line between the two properties. The Culps also acknowledged that Beechview granted the Perpetual Field Line easement pursuant to Article V, paragraph 22, of the development's *Declaration of Conditions, Covenants and Restrictions*, ("Declaration") which reserves to itself a ten-foot easement around the perimeter of every lot for the purpose of installing and maintaining utilities and drainage. That provision states, in pertinent part:

> Declarant [Beechview] for itself, its successors, assigns and licensees, reserves ten (10) foot easements parallel to all property lines through and upon said land for the installation of utilities and for drainage and the perpetual maintenance thereof. Declarant for itself, its successors, assigns, and licensees, also reserves the right to install and operate electric and telephone lines, poles and appurtenances thereto, culverts and drainage ditches . . . . Declarant for itself, successors, assigns and licensees, also reserves the right to locate and install drains where it deems necessary and to cause or permit drainage of surface waters over/and through said land.

With regard to septic tanks and sewage disposal, Article III, paragraph 18 of the Declarations provides, in pertinent part:

---

[1] Lot 2, Section 2, and Lot 2, Section 3 are directly across the street from one another.

[2] In 1991, Mr. Jack Davidson, an employee with the Tennessee Department of Environment and Conservation testified at trial that the previous owners of the Grinders' property (the Hinsons) applied for a permit to install a septic system. Mr. Davidson told the previous owners that an easement would be required because there was an insufficient amount of soil to put a septic tank drain field on the lot, and he had to go somewhere else to install the field line with a solid line. As a result, Beechview executed the Perpetual Field Line easement at issue. The Lopezes were not informed of the easement.

Owners will be required to obtain a permit for the installation of a septic tank from the Wayne County Health Department. Every sewage disposal system shall be of the type approved or recommended by the Tennessee or local health departments, and shall be maintained by the owner at all times in a sanitary condition and in strict accordance with applicable state and local sanitation laws and regulations . . . .

In the event declarant causes to be installed a sewage treatment unit for the general use of the lots in any subdivision, the owners of said shall be required to tap on to said sewer system for a fee of $750 and use of the septic systems within the subdivision shall cease, provided however, that this paragraph shall not be construed as an absolute obligation on the part of declarant or representation that such a sewer treatment package shall ever be put in place.

On October 6, 2000, the Grinders filed a third-party complaint against Beechview.[3] At the time the property was purchased, Mr. Culp knew that there was a ten foot easement surrounding the property for utilities and drainage. At trial, however, Mr. Culp testified that he was not aware that there were Perpetual Field Line Easements within the ten foot easement even though the easements were properly recorded at the time the Culps received their deed. The Culps also testified that the solid line was leaking. As proof, Mr. Culp testified that dried soap suds appear on the property, along with mud and water, and that the grass is real green along the solid line. The trial court found the testimony of Mr. Culp not credible on his claim that the septic line was leaking onto his property.

During the trial, Mr. Jack Davidson with the Tennessee Department of Environment and Conservation testified that he went to the Culps' property on June 14, 2001, to investigate the Culps' complaint of a leak. He found no evidence of such.[4] The only water that he found near the property appeared to be in a temporary hole that an employee of Beechview had dug with a backhoe.

The Grinders offered additional explanations for the wetness on the Culps' property. First, they pointed out at trial that the area is in a flood plain and that the Tennessee River does occasionally flood. Moreover, the Culps' property is flat and at the bottom of a hill.

After the bench trial, the trial court entered an order dismissing the Culps' complaint and making the following findings:

The Plaintiffs do not seek money damages, rather they want the Defendants to move the solid sewage line which runs from Defendants' property across Beechview Dive from Plaintiffs' property, to the line between Plaintiffs' property and the property of Levis Ferrell which is adjacent to Plaintiffs' property. This solid line runs on through

---

[3] Beechview has not filed a brief on appeal, but did participate at trial.

[4] The solid line runs downhill from the septic tank to the field lines. According to Mr. Davidson, a septic tank expert, there is little chance that the line would have standing water in it at all.

said property lines to an area behind Plaintiffs' property, where it runs into field lines, . . . .

At the time the Plaintiffs purchased their property, there was in existence a Declaration of Conditions which governs all property owners in Beechview Recreation Development. . . . Section II, Paragraph 7, Section III, Paragraph 18, Section V, Paragraph 22, and Section VI, Paragraph 23, all govern the issues involved in this case. The Plaintiff, Billy Culp testified he was aware of all these sections when he purchased his real estate. The Plaintiffs complain that the solid line, which this Court finds is on a ten (10) foot easement owned by the third party Defendant, Beechview Recreation Development Corporation and not on Plaintiffs' property, leaks and water or sewage stands on their property. Billy Culp further testified that he dug down about one foot to the solid line, at a spot where a sewer was leaking, that he observed the leak, yet he says he covered this pipe up and did not photograph this leakage because he did not have his camera. This testimony leaves the Court with little regard for the Plaintiff's credibility. This was evidence he could have used, if true, to prove his point; that there is leakage. The fact that he chose not to produce it, leads this Court to believe it never existed. The Plaintiffs did produce some seven (7) photographs which added nothing to their lawsuit.

The Plaintiffs argue that the Perpetual Field Line easements upon the Plaintiffs' property materially increase the burden upon Plaintiffs' real property, and that the Restrictive Covenants were in derogation of the unrestricted enjoyment of Plaintiffs' property, which this Court finds to be untrue. This Court finds that the easements, covenants and other restrictions and declarations which bound all property owners, were merely an attempt on the part of the Development to provide an orderly and concise method of controlling sewage disposal.

The Plaintiffs simply have no case.

The Culps appeal, arguing that Beechview had no authority to execute the Perpetual Field Line Easement because a septic system is not a "utility" as included in the Declarations, and also arguing that the trial court erred in finding that the easement did not materially burden their property and that the easement was merely an attempt on the part of Beechview to provide an orderly and concise method of controlling sewage disposal. Specifically, they argue that Article V, paragraph 22 of the Declarations of Beechview does not allow for the granting of easements that benefit only one parcel or lot as opposed to the granting of an easement for the development as a whole.

The standard of review on appeal is well-settled. We review the trial court's findings *de novo*, with a presumption of the correctness of the factual findings of the trial court. Tenn. R. App. P. 13(d). No such presumption of correctness attaches to the trial court's conclusions of law. *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). The issue in this case is not whether an easement exists, but rather the extent of the easement.

An easement is an interest in another's real property that confers on the easement's holder an enforceable right to use that real property for a specific purpose. *Bradley v. McLeod*, 984 S.W.2d 929, 934 (Tenn. Ct. App. 1998). When an easement arises from a grant or reservation in a deed, the extent of the easement is determined by the language of the grant or reservation. *See, e.g., Foshee v. Brigman*, 174 Tenn. 564, 567, 129 S.W.2d 207, 208 (Tenn. 1939). Interpretation of the grant may be aided if necessary by the situation of the property and the surrounding circumstances. *Lynn v. Turpin*, 187 Tenn. 384, 388, 215 S.W.2d 794, 796 (1948); C.J.S. *Easements* §12.

The express easement at issue herein was granted in 1992 for the purpose of installing and maintaining a field line to service the septic tank on Lot 2, Section 2 of Beechview. The Culps merely argue that Beechview had no authority to create the easement in the first place and that even if they did have the authority to create the easement, the Perpetual Field Line Easements were not the type of easements covered by the "utilities" language in the declarations. They argue that the restrictive covenant applied only to public utilities such as county or city sewer systems.

The Declaration "reserves ten (10) foot easements parallel to all property lines through and upon said land for the installation of utilities and for drainage and the perpetual maintenance thereof." The language does not specify what "utilities" are included, and the Culps assert the phrase refers to public utilities. There is no basis for this argument in the language itself, and the facts surrounding the reservation of the easement dispute that interpretation. As Article III, paragraph 10 of the declarations makes clear, the developers anticipated that each lot owner would install a septic tank or sewage disposal system. While later development of a treatment unit for all the lots was mentioned as a possibility in the future, the developers made clear that there was no obligation to install such a sewer system and that each property owner was responsible for sewage disposal. We agree with the trial court that the developers intended an orderly, regulation-compliant system of sewage disposal based originally on each lot owner providing a system. Therefore, we construe the easement's language "for the installation of utilities" to include installation related to private septic systems. The language of the original easement indicates that it was the intention of the parties to the transaction creating the easement that utilities could be installed in the easement. The easement at issue was certainly used for utility purposes.

The use of the easement for septic system purposes did not materially increase the burden on the Culps' property either. While it is well-settled that the owner of an easement cannot materially increase the burden of the servient estate, *McCammon v. Meredith*, 830 S.W.2d 577, 580 (Tenn. Ct. App. 1991), the trial court found that Mr. Culp's testimony as to the burden the easement created on his property was not credible. The trial court is in a far better position than this court to observe the demeanor of the witnesses and resolve the issues in the case that are based on the credibility of the witnesses. *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997). The trial court made its determination after hearing all of the testimony, including that of Mr. Culp and found that the "the plaintiffs simply have no case." The evidence does not preponderate against the trial court's factual finding that no burden was proved.

For the foregoing reasons, we affirm the decision of the trial court and remand the case for any further proceedings which may be necessary. Costs of the appeal are taxed to Billy Culp and Lois Culp.

_____
PATRICIA J. COTTRELL, JUDGE