IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 14, 2010

**GLYNDA SHEALY v. CHUONG C. WILLIAMS, ET AL.**

**Appeal from the Chancery Court for Loudon County**
**No. 11032      Frank V. Williams, III, Chancellor**

_____

**No. E2009-00126-COA-R3-CV - FILED SEPTEMBER 8, 2010**

_____

This appeal involves a dispute between adjacent landowners over boundary lines with respect
to a fence and ownership of property constituting a substantial portion of a concrete driveway
to one neighbor's house.  Glynda Shealy ("Plaintiff") sued Chuong C. Williams and Nickie
Ann Dunker ("Defendants") for trespass and malicious encroachment, claiming that
Defendants' concrete driveway and backyard fence encroached upon Plaintiff's adjoining
properties.  In response, both Defendants asserted a defense of adverse possession.  Upon
conclusion of a bench trial, the trial court found, inter alia, that the concrete driveway
intruded on Plaintiff's property but that Defendant Dunker had a prescriptive easement in a
gravel driveway for ingress and egress.  Additionally, the trial court ordered Defendant
Dunker to remove her backyard fence to the legally established boundary lines and awarded
Plaintiff $50 in nominal damages.  After the trial court dismissed Defendant Williams from
this lawsuit, Defendant Dunker filed a motion to amend her answer to add a defensive claim
of easement by prescription.  The trial court granted the motion.  Plaintiff appealed.  We
affirm in part and reverse in part.

**Tenn. R. App. P. Appeal as of Right; Judgment of the Chancery Court**
**Affirmed in Part and Reversed in Part; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS,
P.J. and CHARLES D. SUSANO, JR., J., joined.

Kent L. Booher, Lenoir City, Tennessee, for the appellant, Glynda Shealy.

Mary K. Longworth, Loudon, Tennessee, for the appellees, Chuong C. Williams and Nickie
Ann Dunker.

**OPINION**

## I. BACKGROUND

Plaintiff owns two city lots, commonly designated as 816 and 822 Vale Street, in Loudon, Tennessee. She purchased both properties in August 2005. Defendant Dunker is the present owner of the intervening lot commonly referred to as 820 Vale Street, which she acquired from her mother, Defendant Williams, by quitclaim deed on June 21, 2005. A gravel-covered driveway was used to access Defendant Dunker's property at the time she purchased the house; she subsequently installed a concrete driveway on July 29, 2005. The quitclaim deed neither creates, recognizes, or reserves any right to use the gravel driveway for ingress and egress to the property at 820 Vale Street. This litigation concerns the alleged encroachment of Defendant's concrete driveway and backyard fence on Plaintiff's adjoining properties. The parties stipulated to the facts.

In 1993, Helen Smallen[1] and her husband, Sammie Smallen, acquired 816, 820, and 822 Vale Street from Mr. Smallen's parents upon the termination of his parents' life estates in these properties. Mrs. Smallen testified as a rebuttal witness for Plaintiff, stating that although she had never deposited gravel on the property at 820 Vale, there was a location for a driveway and there might have been some gravel hidden under the grass. However, she recalled "very little or no gravel forming a driveway" between the properties at 816 and 820 Vale Street. Mrs. Smallen further testified that she had not lived on Vale Street, and after her husband passed away, she operated the three properties at issue as rental properties. In December 1998, she sold the properties at 816 and 822 Vale Street to William Johnson, who did not testify at trial.

Almost a year earlier, in January 1998, Mrs. Smallen had conveyed the property at 820 Vale Street to Alfred Dean Russell. He testified that he parked his vehicle on a gravel "driveway" located to the right of the house looking from Vale Street and further stated that the gravel driveway existed during his ownership. Mr. Russell assumed that the gravel driveway was on his property and accordingly, never asked anyone for permission to use it.

In June 1998, Mr. Russell conveyed the property at 820 Vale Street to Charles "Cotton" Duncan. Mr. Duncan owned 820 Vale Street from June 1998 until August 2004. He testified that during his ownership he parked his vehicle on a gravel driveway that was located to the right of the house as one looks at the property from Vale Street. He further

---

[1]Although Mrs. Smallen is remarried and is now known as Mrs. Gore, we will continue to refer to her as Mrs. Smallen in order to simplify the facts.

stated that the curb cuts for the driveway and the driveway itself existed at the time he purchased the property. Mr. Duncan testified that the gravel driveway at 820 Vale Street "obviously" had been used for that purpose prior to his purchase of the property. He further indicated that he was very familiar with Vale Street because his mother had lived on it for twenty years (no dates provided). Additionally, Mr. Duncan testified that the gravel area where he parked his vehicle during his ownership had been there as long as he could remember.

In August 2004, Mr. Duncan deeded 820 Vale Street back to Mr. Russell, who then conveyed it to Defendant Williams in November 2004. Shortly afterwards, Defendant Williams transferred the property to Defendant Dunker, by quitclaim deed on June 21, 2005. The record contains no testimony from Defendant Williams concerning the existence and use of a gravel driveway.

Defendant Dunker testified that the gravel driveway existed at the time she purchased the property. She confirmed that she paid, with assistance from her mother, for the concrete driveway installed by Ready-Mix Concrete Company on July 29, 2005, because the gravel driveway was transformed into a "mess" following a heavy rainfall. Defendant Dunker also stated that she had no conversations with Plaintiff prior to the installation of the concrete driveway, and she had not authorized her mother to discuss the driveway with Plaintiff. Defendant Dunker testified that the location of the concrete driveway matched up with the preexisting curb cuts and that she believed the driveway to be entirely on her property. She also stated that the driveway "did not follow the fence line[,] because she believed the fence was on the property later bought by [Plaintiff] Ms. Shealy."

Michelle Turner purchased the properties at 816 and 822 Vale Street in June 2004 and used the houses as rental properties prior to conveying both lots to Plaintiff in August 2005. Ms. Turner testified that she permitted her tenants to park on the grass between her property at 816 Vale Street and the property located at 820 Vale Street.

Lila McKee, ostensibly an elderly woman, stated at trial that she had lived most of her life at 825 Vale Street -- directly across the street from 820. Mrs. McKee testified that for as long as she could recall, people had parked their vehicles at 820 Vale Street using the site of the present concrete driveway, although previously it was a graveled or grassy driveway. She opined that the curb cuts probably had been installed in the 1970s. Mrs. McKee also stated that, to her knowledge, the resident(s) of 816 Vale Street never used Defendant's driveway but, instead, parked on the other side of the property. Finally, with regards to the backyard fence at 820 Vale Street, Mrs. McKee testified that she remembered Mr. Duncan installing the current wire metal fence in 1998 or 1999 and that the fence in question had not been moved recently.

In her testimony at trial, Plaintiff attested that Defendant Williams had approached her before installation of the concrete driveway at 820 Vale Street to make sure that Plaintiff approved the proposed driveway site. At that time, Plaintiff had asked Defendant Williams to postpone putting in the concrete driveway until after a survey of the lots had been completed. Plaintiff suspected that the site for the proposed driveway extended into her property at 816 Vale Street. Additionally, Plaintiff stated that she believed Defendant Williams to be the owner of the property at 820 Vale Street and that she never spoke to Defendant Dunker about the driveway. Despite Plaintiff's request, the concrete driveway at 820 Vale Street was installed in 2005 with "Dunkers '05" etched in the concrete. As Defendant Williams testified, the driveway site was already leveled and the concrete poured before Plaintiff closed on her properties. Afterwards, Plaintiff stated that Defendant Williams asked Plaintiff "to just *give her* the land" upon which the driveway had been placed because of the expense she had incurred. Defendants refused to remove the driveway.

James Loveday, a state-licensed land surveyor, testified at trial that he surveyed Plaintiff's properties located at 816 and 822 Vale Street in June 2006. This survey, which included Defendant Dunker's lot at 820 Vale Street, revealed that the concrete driveway substantially encroached on Plaintiff's property at 816 Vale Street. Furthermore, a backyard wire fence located at 820 Vale Street obtruded on Plaintiff's properties at 816 and 822 Vale Street. In his testimony, Mr. Loveday expressed concern that his "starting points" for the survey were based on a "weak plat." He observed that the wire fence at 820 Vale Street did not appear to be new.

Loudon city and county officials also provided testimony at trial. Bill Fagg, who worked for the Loudon Streets Department at the time of his testimony, confirmed that curb cuts were inserted at existing driveways when new curbing was installed on Vale Street between 1977 and 1979. Mr. Fagg further specified that a driveway cut in the curbing was placed between the properties at 816 and 820 Vale Street. Loudon County Property Assessor, Chuck Jenkins, identified a white area on a 2001 GIS-generated aerial map as a driveway between the two land tracts designated as 816 and 820 Vale Street.

Plaintiff stated that she purchased the two properties (816 and 822 Vale Street) for the purpose of refurbishing the houses and selling them for a profit within two years. Plaintiff claimed that the value of her house at 816 Vale Street has been diminished by $10,000 because of the encroachment of her neighbor's concrete driveway on her front yard. However, she offered no evidence to substantiate this claim.

After the bench trial, the judgment entered provided, inter alia, as follows:

1. That the fence around the backyard of the house owned by Nickie Ann

-4-

Dunker at 820 Vale Street encroaches on Plaintiff's property. The fence shall be removed to the boundary lines established by the survey prepared by James Loveday of Century Surveying.

2. That the concrete driveway located at 820 Vale Street encroaches on the property owned by Plaintiff and located at 816 Vale Street, but the court FINDS that Nickie Ann Dunker has an easement by prescription for a graveled driveway to come and go from her property. The court accordingly ORDERS that Nickie Ann Dunker shall have an easement for ingress and egress to her property.

3. However, the placement of concrete on the driveway located at 820 Vale Street exceeds the scope of the driveway Nickie Ann Dunker is awarded, and the concrete shall be removed, but gravel may be used on the driveway at the size it was before being concreted.

4. That Chuong Williams is dismissed from this lawsuit; and the costs of the suit against Chuong Williams are taxed to Plaintiff Glynda Shealy . . . .

5. That Plaintiff is awarded the sum of fifty dollars ($50.00) as nominal damages.

* * *

On July 22, 2008, Plaintiff filed a motion to alter or amend judgment or for a new trial on the basis that neither Defendant claimed an easement as their defense to trespass. Almost five months later, Defendant Dunker moved to amend the pleadings to conform to the evidence. Her amended answer included a defense of adverse possession and, in the alternative, that she had an easement by prescription or by necessity. After a hearing, the trial court entered an order denying Plaintiff's motion for a new trial and permitting Defendant's Dunker's amended answer but with the words "or of necessity" deleted. Plaintiff subsequently filed a timely notice of appeal.

## II. ISSUES FOR REVIEW

We substantially restate and consolidate the issues presented by Plaintiff on appeal as follows:

A. Whether the trial court erred in finding that Defendants had an easement

by prescription.

B. Whether Plaintiff is entitled to more than nominal damages if the trial court erred in finding a prescriptive easement.


## III. STANDARD OF REVIEW


This case was adjudicated without a jury. Therefore, we review the decision de novo upon the record of the proceedings with a presumption of correctness as to the findings of fact of the trial court. *See* Tenn. R. App. R. 13(d); *Boarman v. Jaynes*, 109 S.W.3d 286, 289-90 (Tenn. 2003). This court imputes no presumption of correctness on the trial court's conclusions of law. *Rutherford County v. Wilson*, 121 S.W.3d 591, 595 (Tenn. 2003); *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996). The judgment of the trial court should be affirmed, absent errors of law, unless the preponderance of the evidence is against those findings. *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). In cases where the trial court's factual findings depend on a determination of witness credibility, we will not reevaluate that assessment in the absence of clear and convincing evidence to the contrary. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *Newman v. Woodard*, 288 S.W.3d 862, 865 (Tenn. Ct. App. 2008).


## IV. ANALYSIS


## A.


Plaintiff asserts on appeal that the trial court erred in finding a prescriptive easement that entitles Defendant Dunker to a gravel driveway for the purpose of accessing her residence at 820 Vale Street. Plaintiff's contention is twofold: (1) that Defendants failed to establish the required elements for a judicial finding of a defensive prescriptive easement claim; and (2) that Defendants failed to meet their burden of clear and convincing evidence in establishing a prescriptive easement. We address each argument together as part of our overall determination of whether the trial court correctly found that Defendant Dunker is entitled to a prescriptive easement over Plaintiff's property.

"An easement is a right an owner has to some lawful *use* of the real property of another." *Pevear v. Hunt*, 924 S.W.2d 114, 115 (Tenn. Ct. App. 1996) (citing *Brew v. Van Deman*, 53 Tenn. 433 (1871)) (emphasis added). In *Newman v. Woodard*, this court further explained easements as follows:

Easements are . . . broadly divided into two classes:  easements appurtenant and easements in gross.  An easement in gross is a personal interest or right to use a parcel of land that does not benefit the land.  Easements appurtenant, on the other hand, involve two tracts of land, and the dominant tenement benefits from the use of the servient tenement.  Easements appurtenant run with the land and may be enforced by subsequent purchasers of the dominant tenement against owners of the servient tenement.

*Newman*, 288 S.W.3d at 865 (citing *Cellco P'ship v. Shelby County*, 172 S.W.3d 574, 588 (Tenn. Ct. App. 2005)) (internal citations omitted).  "An easement appurtenant to land is favored over an easement in gross in Tennessee."  *Cellco P'ship v. Shelby County*, 172 S.W.3d 574, 588 (Tenn. Ct. App. 2005).  The case at bar involves a potential easement appurtenant, because Defendant Dunker, the owner of the dominant estate, claims an easement over Plaintiff's servient estate for the benefit of Defendant.

The trial court in this case found that Defendant Dunker's easement appurtenant was created by prescription.  Although analogous to the doctrine of adverse possession, prescriptive easement is distinguished in that there is "adverse *use* of the land of another" in contrast to the situation where the adverse possessor physically occupies the land of another.  *See Cumulus Broadcasting, Inc. v. Shim*, 226 S.W.3d 366, 378 (Tenn. 2007) (emphasis in original).  Therefore, an entitlement to a prescriptive easement does not constitute ownership: "the right acquired is limited to the specific use."  *Id.* at 379 (citing *Bradley v. McLeod*, 984 S.W.2d 929, 934 (Tenn. Ct. App. 1998)).

The necessary elements of a prescriptive easement have been restated in *Pevear v. Hunt* as follows:

To create a prescriptive easement, the use and enjoyment of the property must be adverse, under a claim of right, continuous, uninterrupted, open, visible, exclusive, with the knowledge and acquiescence of the owner of the servient tenement, and must continue for the full prescriptive period.  In Tennessee the prescriptive period is 20 years.

*Pevear*, 924 S.W.2d at 116 (internal citations omitted).

The party who claims the existence of a prescriptive easement bears the burden of proving the aforementioned elements by clear and convincing evidence.  *See Shew v. Bawgus*, 227 S.W.3d 569, 578 (Tenn. Ct. App. 2007); *McCammon v. Meredith*, 830 S.W.2d 577, 580 (Tenn. Ct. App. 1991).  This court has defined the clear and convincing evidence standard as being "more exacting than the preponderance of the evidence standard" but not

requiring "such certainty as the beyond a reasonable doubt standard." *O'Daniel v. Messier*, 905 S.W.2d 182, 188 (Tenn. Ct. App. 1995). "Clear and convincing evidence eliminates any serious or substantial doubt concerning the correctness of the conclusions to be drawn from the evidence." *Id.*; *see also Hodges v. S. C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992).

In further clarifying the elements required for a judicial finding of a prescriptive easement, this court has deemed intermittent or seasonal use of another individual's land for a temporary purpose as insufficient to establish such an easement. *McCammon*, 830 S.W.2d at 580 (concluding that "[m]ere acts of trespass do not constitute actual possession."). Additionally, application of the doctrine of prescriptive easement requires evidence that a person has adversely and continuously used the property for the requisite period of time. *Bradley v. McLeod*, 984 S.W.2d 929, 935 (Tenn. Ct. App. 1998). Easement by prescription can only be obtained where the use is adverse, not permissive. *City of Whitwell v. White*, 529 S.W.2d 228, 230 (Tenn. Ct. App. 1974). Furthermore, Tennessee courts have expressed the opinion that in establishing the full prescriptive period, parties may "tack" their adverse possession onto that of predecessors in title. *Derryberry v. Ledford*, 506 S.W.2d 152, 156 (Tenn. Ct. App. 1973). However, as stated by this court, "[t]acking requires that the combined periods be successive, that each possession must meet the elements of prescriptive easement, and that the possessions be in privity." *Thompson v. Hulse*, No. E1999-02474-COA-R3-CV, 2000 WL 124787, at *3 (Tenn. Ct. App. E.S., Jan. 26, 2000). Finally, continuous use of the property by itself—in the absence of the other factors—is not sufficient to create a prescriptive easement. *Page v. Fuchs*, No. W1999-00702-COA-R3-CV, 2000 WL 791812, at *3 (Tenn. Ct. App. W.S., June 6, 2000).

The trial court found that Defendant Dunker had a prescriptive easement for a gravel driveway on Plaintiff's property and ordered the driveway to be returned to its original width in gravel form. The trial court further stated that it considered the central issue in the case at bar to be one of ingress and egress to the property in question and not an acquisition of title by adverse possession. However, sufficient property access is not relevant to the question of whether a prescriptive easement was properly created in this instance. Because the elements required to establish a prescriptive easement under this state's common law were not proven, we must reverse the trial court's holding granting Defendant Dunker a prescriptive easement for a gravel driveway across Plaintiff's property.

The record shows that Defendant Dunker purchased the property at 820 Vale Street in 2005. Therefore, to prove the existence of a prescriptive easement, Defendant Dunker must demonstrate by clear and convincing evidence that she and her predecessors in title used the gravel driveway encroaching upon Plaintiff's property for at least twenty years without a hiatus and in a manner consistent with the legal requirements. The trial testimony provided

a chain of title for the property at 820 Vale Street extending as far back as 1993, the year that Mr. and Mrs. Smallen acquired not only 820 but also the properties at 816 and 822 Vale Street upon expiration of the life estates retained by Mr. Smallen's parents. From 1993 to 1998, the properties at 816, 820, and 822 Vale Street were owned by the Smallens and operated as rental properties. As noted by Plaintiff in her brief, this court has clearly stated that "the rightful and legal owner of property cannot adversely possess against his own interest in the land." *Holley v. Haehl*, No. M1999-02105-COA-R3-CV, 2000 WL 1292291, at *3 (Tenn. Ct. App. W.S., Sept. 14, 2000); *see also Bingham v. Knipp*, Nos. 11281, 02A01-9803-CH-00083, 1999 WL 86985, at *2 (Tenn. Ct. App. W.S., Feb. 23, 1999). A party claiming ownership by adverse possession "must sustain the proposition that the possession was in fact adverse to the true owner." *Bynum v. Hollowell*, 656 S.W.2d 400, 403 (Tenn. Ct. App. 1983). Therefore, because a party cannot use property adversely to his or her own interests, we agree with Plaintiff that the Smallens' simultaneous ownership of Defendant Dunker's property (the dominant estate) and Plaintiff's property (the servient estate) precluded the prescriptive period from running during the Smallens' period of use.

The undisputed testimony of subsequent purchasers of 820 Vale Street — namely, Mr. Russell, Mr. Duncan, and Defendant Dunker — established that the use of the gravel driveway for ingress and egress was continuous, open, exclusive, and nonpermissive during a period from 1998 to 2008. Both Mr. Russell and Mr. Duncan, for example, testified that they did not ask or receive permission to park in the gravel driveway at 820 Vale Street when they occupied the property. However, this use represents only a ten-year period, which fails to meet the prescriptive period required under the common law of Tennessee. Even if the Smallens' usage period can be tacked, the full prescriptive period of twenty years is still not satisfied.

After carefully reviewing the record on appeal, we note that neither party presented testimony at trial from predecessors in interest prior to the Smallens' ownership regarding usage of the alleged easement. Additionally, as Plaintiff points out in her brief, no evidence was offered as to whether the land parcels at issue were owned by the same person or different persons prior to ownership by Mrs. Smallens' in-laws. Instead, Defendants rely largely upon the recollections of an elderly woman, Mrs. McKee, whose age was not disclosed at trial and who had lived across from 820 Vale Street most of her life for an unspecified time. Both Mrs. McKee and Mr. Duncan, whose mother had lived on Vale Street for twenty years, testified that as far back as they both could recall, there was a gravel or grassy driveway at 820 Vale Street that was used to park vehicles. Neither testimony, however, established a specific starting year for the running of a prescriptive period before the Smallens' simultaneous ownership of the dominant and servient estates.

Based upon the foregoing analysis, Defendants have failed to meet the burden of

proving by clear and convincing evidence that their use of the land was adverse and under a claim of right for an uninterrupted period of twenty years. We, therefore, reverse the trial court's judgment based on our conclusion that the record contains insufficient evidence to support the trial court's finding that Defendant Dunker or her predecessors in title had acquired a prescriptive easement across Plaintiff's property.

**B.**

Plaintiff raises an additional issue on appeal, asking that if the trial court erred in finding an easement by prescription, is she entitled to more than nominal damages. In her complaint, Plaintiff averred that she is entitled to $150,000 in compensatory damages for Defendants' continued trespass on her property and $50,000 in punitive damages. The trial court awarded Plaintiff a sum of $50 as nominal damages based on its finding of a prescriptive easement and ascribed the cost of returning the driveway to its previous condition to Defendant Dunker.

As the finder of fact, the trial court is not obligated to accept any monetary figures disclosed by witness testimony when determining the measure of damages. *Cole v. Clifton*, 833 S.W.2d 75, 77 (Tenn. Ct. App. 1992). "Where the landowner in a trespass action had incentive to suggest [a] large diminution in value of his property, [the] trial court as finder of fact had to consider [the] landowner's credibility when determining whether damages had been proved." *Id.* at 75. As explained above, this court will not reevaluate factual findings based on the trial court's assessment of witness credibility absent clear and convincing evidence to the contrary. *Jones*, 92 S.W.3d at 838; *Newman*, 288 S.W.3d at 865.

In the instant case, Plaintiff offered no admissible testimony at trial or other evidence specifying the damages she allegedly incurred as a result of Defendants' continued trespass on her property. Plaintiff testified that she has been unable to sell her properties because of the pending suit, which she initiated. Additionally, in sustaining the opposing counsel's objection as hearsay, the trial court disallowed Plaintiff's statement that her appraiser deducted $10,000 off the value of her property at 816 Vale Street because of the encroachment by the concrete driveway. We therefore conclude that the record fails to contain any evidence preponderating against the trial court's award of nominal damages to Plaintiff.

**V. CONCLUSION**

The judgment of the trial court is affirmed in part, reversed in part, and remanded for

further proceedings consistent with the opinion of this court.  Costs on appeal are taxed to the appellees, Chuong C. Williams and Nickie Ann Dunker.


_____
JOHN W. McCLARTY, JUDGE